***UNITED STATES DISTRICT COURT***
***FOR THE DISTRICT OF COLUMBIA***

| | | |
|---|---|---|
| **LESLIE BALLOU TURNER,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JAMES H. BILLINGTON,**<br>**Librarian, United States Library of Congress ,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Action No. 02-00219 (JGP)** |

**MEMORANDUM OPINION**

This matter is before the Court on **Defendant's Motion for Summary Judgment [#31]** ("Def.'s Mot.")[1]. Within the Motion, defendant argued that plaintiff has failed to meet her *prima facie* burden of establishing the elements of gender discrimination and retaliation within the framework first established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)[2]. *See* Def.'s Mot. at 1. Plaintiff then filed a Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment [#34] ("Pl.'s Memo"). Thereafter, defendant filed its Reply

---

[1] When citing defendant's Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, the Court will hereafter use the abbreviation "Def.'s Memo."

[2] The Supreme Court first set-forth the three-part test for analyzing Title VII claims in *McDonnell Douglas*. In *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981), the Court made applicable the *McDonnell Douglas* test to claims of gender discrimination. Likewise, in *Robinson v. Shell Oil Co.*, 519 U.S. 337, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997) and many other cases like it, the Court addressed the claim of retaliation under Title VII using a variant of the *McDonnell Douglas* test. *See Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002). *McDonnell Douglas* accordingly controls the instant inquiries.

[#36]. The issue of summary judgment concerning both the gender discrimination and retaliation claims is now ripe for this Court's consideration.

With regard to plaintiff's gender discrimination claim, the Court is tasked with deciding whether (1) the temporary promotion of seven male technicians[3] to the GS-13 level while plaintiff, a Telecommunications Specialist, was refused a GS-13 grade promotion, and (2) plaintiff's assertion that the draft position description of a male Telecommunications Specialist was forwarded for review and reclassification while plaintiff's draft position description was not forwarded for review and reclassification, present "genuine issue[s] . . . [of] material fact . . . ." Fed. R. Civ. P. 56(c); *see* Def.'s Memo at 1-2; Pl.'s Memo at 2-3. With regard to plaintiff's retaliation claim, the Court is tasked with deciding whether (1) the reassignment of many of plaintiff's duties and responsibilities to others, and (2) management's failure to afford plaintiff training opportunities or manual performance appraisals, also present genuine issues of material fact. *See id*.

The Court concludes that summary judgment should be denied as to the gender discrimination claim, and summary judgment should be granted as to the retaliation claim. The Court's conclusions are fully explained below.

**BACKGROUND**

Plaintiff Leslie Ballou Turner was hired at the Library of Congress ("Library") as a

---

[3] The parties are in agreement that "[t]he [seven male technicians] are: Joseph Eason, Telecommunication Specialist, . . . Eric Ingram, Telecommunication Specialist, . . . Robert Morgan, Telecommunication Specialist, . . . Joseph Raison, Telecommunication Specialist, . . . Wayne Riggans, Telecommunication Specialist, . . . Ricky Swecker, Telecommunication Specialist, . . . and James Wright, Telecommunication Specialist[.]" Defendant's Response to Plaintiff's First Set of Interrogatories at 5.

Communications Specialist and began working at the GS-9 level within the Information Technology Services ("ITS") group on January 4, 1988. *See* Complaint ("Compl.") at ¶ 8. In 1989, she filed an Equal Employment Opportunity ("EEO") claim of disparate treatment based on gender discrimination. An administrative settlement was reached under which plaintiff was promoted from the GS-9 level to the GS-11 level effective December 19, 1989 and reassigned to the GS-11 to GS-12 career ladder[4]. *See id*. at ¶ 9. In 1990, the Library changed plaintiff's position title to Telecommunications Specialist and she was promoted to the GS-12 level. *See* Deposition of Leslie B. Turner, May 3, 2004 ("Turner Dep.") at 8.

As a Telecommunications Specialist on the Telecommunications Team within the ITS User Support Group, plaintiff was responsible for billing, circuitry, working with vendors, telephone reconfiguration and authentication of telecommunications accounts. *See id*. at 43-44; Handy Affid. at ¶ 3; Def.'s Memo at 2. From 1991 to 1994, plaintiff implemented the System 85 telephone switching system and "serve[d] as the Library's liaison to Bell Atlantic . . . ." Def.'s Memo at 2. Plaintiff 's work with System 85 comprised "the adding, deleting, moving or changing of telephone services within the library . . . [,]" and "did not [include] physically relocat[ing] the telephones or run[ning] wiring to the phones" *Id*. The latter was the responsibility, *inter alia*, of the seven male Library technicians plaintiff referred to within the Complaint, as plaintiff and these men were "in the same job series, but not on the same position

---

[4] According to the affidavit of Michael Handy, Leader, User Support Group and plaintiff's supervisor for much of her time at the Library, plaintiff "was granted a special waiver of Article XI, Section 2 of the Collective Bargaining Agreement to allow her to assume duties in the Telecommunications Specialist series without the normal competitive process . . . . [This] afforded her the opportunity to rise to the GS-12 level." Affidavit of Michael Handy, March 24, 1997 ("Handy Affid.") at ¶ 1.

description[.]" *Id*. at 3.

In 1993, plaintiff, along with Bernice Felder, an African-American female, and David Jones, a Caucasian male, requested that they be reclassified from the GS-12 level to the GS-13 level. *See* Def.'s Memo at 4. Consistent with the prescribed internal procedure for formally requesting this type of promotion, the three ITS User Support Group employees "drafted and submitted to Mr. Handy a position description which they asserted reflected the duties they were performing." *Id*. They also met on several occasions with Mr. Handy to discuss their requests for advancement to the GS-13 level. *See id*. According to defendant, however, because "Mr. Handy did not agree that the draft position description accurately reflected the duties plaintiff and the other [two] employees were performing. . .[,] he did not forward the[ir] draft position description to Human Resources for review and classification." *Id*. at 4-5. Nonetheless, plaintiff has insisted that Mr. Handy *did forward* the draft position description of David Jones to Human Resources for review and reclassification. *See* Pl.'s Memo at 2-3.

There is no evidence that subsequent to the decision by Mr. Handy not to submit plaintiff's draft position description for review and classification that plaintiff went to Human Resources for a determination of her appropriate grade level, or appealed such a grade level determination to the Office of Personnel Management ("OPM"). *See*, *e.g*., Def.'s Memo at 5. However, pursuing the matter with Human Resources and/or appealing to OPM was plaintiff's "right" and *not* required of her "[u]nder Library regulation." *Id*.

Plaintiff was moved from working with "System 85 to a more sophisticated telephone switching system called the Definity G2" in 1994. *Id*. Plaintiff was initially involved with corresponding with the Definity G2 vendor's Denver, Colorado office, a responsibility apparently

shared by many ITS User Support Group employees working with the Definity G2 system. *See id*. However, purportedly at the request of the vendor, this practice soon changed and "Shereese Smith[,] an African-American female[,] was designated by her [Library] supervisor" as the sole intermediary between the Library and the Definity G2 vendor's Denver office. *Id*.

In 1995, plaintiff filed an EEO claim asserting that Library officials unlawfully discriminated against her based on gender because they refused to promote her to the GS-13 level. *See id*. Her claim also asserted that the Library "retaliated against [her] for engaging in protected activities." *Id*. at 5.

Following administrative dismissal of her action against the Library, on February 6, 2002, plaintiff filed a civil Complaint in which she named James H. Billington as defendant in his official capacity as Librarian of the Library of Congress. *See* Compl. at ¶ 1. Plaintiff did so seeking injunctive relief and damages in the amount of $300,000 per cause of action against the Library based on her allegations that defendant discriminated against her because of gender[5] and retaliated[6] against her after she filed her first EEO action alleging gender discrimination in 1989[7].

---

[5] Under Title VII, it is unlawful to "discriminate against any individual with respect to his *compensation*, terms, conditions, or *privileges of employment*, because of such individual's race, color, religion, *sex*, or national origin." 42 U.S.C. § 2000e-2(a) (emphasis added). The law is aimed at prohibiting "not only overt discrimination[,]" *i.e*., disparate treatment discrimination, "but also practices that are fair in form, but discriminatory in operation[,]" *i.e*., disparate impact discrimination. *Griggs v. Duke Power Co*., 401 U.S. 424, 431, 91 S. Ct. 849, 28 L. Ed. 2d 158 (1971). Clearly in the present case, plaintiff has asserted overt discrimination or disparate-treatment because her Complaint alleges that the Library, her "employer[,] . . . treat[ed] [her] less favorably than others because of [her] . . . . sex[.]" *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335, 97 S. Ct. 1843, 52 L. Ed. 2d 396, at n.15 (1977).

[6] In the section that relates to retaliation by employers, Title VII provides the following in relevant part below:

> [i]t shall be an unlawful employment practice for an employer to

*See* Compl. at ¶¶ 2-3. Plaintiff contended that defendant's conduct in this regard "violat[ed] . . . Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq*., as amended." *Id*. Defendant filed its Answer ("Answ.") on April 15, 2002.

**ANALYSIS**

**I. Standard of Review**

"A motion for summary judgment is properly granted" where the Court determines that "reasonable jurors could [not] find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]" *Griffin v. Acacia Life Ins. Co*., 151 F. Supp. 2d 78, 79-80 (D.D.C. 2001) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). This outcome "is appropriate when evidence on file shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*. (citations and internal quotation marks omitted). In point of fact,

> a genuine dispute about material facts exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.
>
> While a nonmovant is not required to produce evidence in a form that would be admissible at trial, *the evidence still must be*

---

> discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has *made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter*.

42 U.S.C. § 2000e-3(a) (emphasis added).

[7] The Agency dismissed plaintiff's action on January 9, 2002. *Id*.

> *capable of being converted into admissible evidence*. Otherwise, the objective of summary judgment -- to prevent unnecessary trials -- would be undermined.

*Id*. at 80 (internal citations, alterations and quotation marks omitted) (emphasis added).

"When ruling on a motion for summary judgment, this Court must view the evidence in the light most favorable to the non-moving party." *Worth v. Jackson*, 377 F. Supp. 2d 177, 180-81 (D.D.C. 2005) (citing *Bayer v. United States Dep't of Treasury*, 294 U.S. App. D.C. 44, 956 F.2d 330, 333 (D.C. Cir. 1992)). "However, the non-moving party cannot rely on 'mere allegations or denials . . ., but . . . must set forth specific facts showing that there [are] genuine issues for trial.'" *Id*. (quoting *Anderson*, 477 U.S. at 248) (alterations in original).

## II. Gender Discrimination under Title VII

In support of her claim of gender discrimination, within her Complaint, plaintiff asserted the following in pertinent part below:

> Defendants, its agents and employees have discriminated against Plaintiff by denying her a promotion/upgrade to a GS-13 while promoting/upgrading seven male employees who had similar or less qualifications then [sic] Plaintiff. Plaintiff also had more time in grade then [sic] most of the men who were promoted.

Compl. at ¶ 17. To this assertion, defendant admitted "only that plaintiff sought and was not given a promotion/upgrade to GS-13. . . ." and denied "the remainder of the allegations contained in this paragraph [of the Complaint.]" Answ. at ¶ 17.

Under the *McDonnell Douglas* framework, to establish her claim of gender discrimination, plaintiff first bears the burden of establishing a *prima facie* case of discrimination "by [a] preponderance of the evidence." *Burdine*, 450 U.S. at 253; *accord McDonnell Douglas*,

411 U.S. at 802. To meet this initial burden, she is required to show that "(1) she is a member of the class protected by the statute; (2) she suffered an adverse employment action; (3) she was qualified for the position at issue; and (4) she was treated less favorably than others not in the protected class." *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir. 1998) (citations omitted). "Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Burdine*, 450 U.S. at 253 (citation and internal quotation marks omitted). And third, if defendant meets this burden, plaintiff must demonstrate that defendant's proffered reason is a pretext for discrimination. *See id*. Despite this burden-shifting between the parties, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id*. (citations omitted).

**(a) Plaintiff's *Prima Facie* Burden**

In the instant case, plaintiff has satisfied element one of the *McDonnell Douglas* test because she is a woman, and so is a member of one of the classes of persons "protected" under Title VII. 42 U.S.C. § 2000e. Also, she has satisfied element two of the test, *i.e*., she suffered an "adverse employment action," because her supervisor refused to submit her draft position description for a GS-13 grade promotion and, by extension, denied her the added compensation that would have come with that promotion. *Walker v. Washington Metro. Area Transit Auth*., 102 F. Supp. 2d 24, 28 (D.D.C. 2000) ("While this circuit has not exhaustively defined what constitutes an adverse employment action . . ., 'courts have consistently focused on . . . hiring, granting leave, *promoting, and compensating*[.]'" (quoting *Taylor v. FDIC*, 328 U.S. App. D.C.

52, 132 F.3d 753, 764 (D.C. Cir. 1997) (emphasis added)). Further, *McDonnell Douglas* element three – the question of whether plaintiff was qualified for the position she sought – presents a genuine issue of material fact most appropriate for a fact-finder's consideration in that plaintiff claimed her draft position description proves that she was qualified for the GS-13 promotion while her supervisor claimed that it does not. *See* Fed. R. Civ. P. 56(c); *Walker*, 102 F. Supp. 2d 24, 26-27 (D.D.C. 2000) ("If a fact bears upon an essential element of the legal claim, then it is material . . ." (citations omitted)). And finally, while element four of the *McDonnell Douglas* test was much more difficult than the three preceding elements for plaintiff to establish, she nonetheless has also succeeded in establishing that there is a genuine issue of material fact regarding this element. *See* Fed. R. Civ. P. 56(c).

Again, plaintiff's fourth burden under *McDonnell Douglas* was to show that she was treated differently from "similarly situated" persons of the opposite sex. *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997); *accord DeCintio v. Westchester County Med. Ctr.*, 807 F.2d 304, 306 (2d Cir. 1986), *cert. denied*, 484 U.S. 825 (1987). The Complaint identified "seven male employees who had similar or less qualifications then [sic] Plaintiff" and who received "promotion[s]/upgrade[s] to [the] GS-13" level while plaintiff was refused a GS-13 promotion/upgrade. Compl. at ¶ 17. Plaintiff argued that she "and the seven males whose positions were reclassified were [similarly situated because they all] were in the same employment classification, they reported to the same person – Michael Handy, and the [Library's] employment policies had been routinely applied to [plaintiff] and the seven males."[8] Pl.'s Memo at 9. Defendant asserted, in contrast, that "the evidence shows that the seven males

[8] Defendant did not specifically oppose this factual assertion made by plaintiff.

were not in comparable positions to plaintiff or the other two employees who sought reclassification to the GS-13 level" because plaintiff and these men performed *materially* different tasks. Def.'s Memo at 9.

As a matter of law, "[t]o be 'similarly situated,' the [seven male Library of Congress technicians] with whom plaintiff attempts to compare herself must be similarly situated in all *material* respects." *Shumway*, 118 F.3d at 64 (emphasis added). "[T]o be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare . . . her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Phillips v. Holladay Prop. Servs.*, 937 F. Supp. 32, 37 (D.D.C. 1996) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Within this Circuit, when the question is close, the ultimate resolution of "whether two employees are similarly situated ordinarily presents a question of fact for the jury." *George v. Leavitt*, 366 U.S. App. D.C. 11, 407 F.3d 405, 412 (D.C. Cir. 2005) (citation and quotation marks omitted). Plaintiff has therefore met her fourth burden under *McDonnell Douglas*. And because plaintiff has thus satisfied all of the elements of *McDonnell Douglas*, she has also succeeded in establishing her *prima facie* case.

**(b) Burden Shifts to Defendant**

Defendant has posited the following "legitimate, nondiscriminatory reason" for rejecting plaintiff's request for a promotion to the GS-13 level, *Burdine*, 450 U.S. at 253:

> [W]hen the request for reclassification of plaintiff's position was proposed, the request was made by plaintiff and two other

> Telecommunication Specialists, *one of which was a male employee. That reclassification was not successful*. But, neither was the reclassification of the seven males [identified within the Complaint]. *The reclassification of these seven employees to the GS-13 level was opposed by ITS management*, *an appeal to OPM was taken and the positions were returned to the GS-12 level*. . . . Clearly, the defendant did not intentionally discriminate against plaintiff in the reclassification of the seven males – a reclassification the defendant did not want and successfully fought.
>
> In sum, plaintiff cannot establish that the decision not to reclassify her position along with two others in her job series, was under circumstances giving rise to an inference of discrimination as required to establish a *prima facie* case of sex discrimination. Thus, the claim should be dismissed.

Def.'s Memo at 10 (emphasis added). Defendant's foregoing explanation of its conduct, if true, would not violate Title VII. *See* 42 U.S.C. § 2000e-2(a). And since defendant, at a minimum, has met its burden of articulating a "legitimate, nondiscriminatory reason" for its actions, the burden shifts again to plaintiff to demonstrate that defendant's proffered reason is a pretext for discrimination. *Burdine*, 450 U.S. at 253.

**(c) Burden Shifts to Plaintiff to Establish Pretext**

"To successfully resist a motion for summary judgment, a plaintiff. . . must produce evidence *countering* that presented by the moving party." *Mayfield v. Meese*, 704 F. Supp. 254, 258 (D.D.C. 1988) (emphasis added); *accord* Fed. R. Civ. P. 56(e). Here, plaintiff made two assertions to support her gender discrimination claim.

First, she asserted that "Michael Handy. . . forwarded to Donald Ware, the Position Classification Office [sic] and The Executive Assignment Officer, the position descriptions of the seven male[] [technicians] for the purpose of reclassification." Pl.'s Memo at 2-3. In support

of this assertion, as is required by the Court's Local Civil Rules, *see* LCvR 7(h)[9], plaintiff cited the testimony of Donald Ware, who stated he received the position descriptions of the seven male technicians from Michael Handy of the ITS User Support Group, *see* Deposition of Donald Ware, April 26, 2001 ("Ware Dep.") at 57-60; *but see* Declaration of Michael Handy ("Handy Decl") at #4 ("ITS opposed th[e] request" of the seven male technicians for submission of their draft position descriptions for review and reclassification "because it was believed that the technicians were properly graded at the GS-12 level."). Plaintiff has therefore sufficiently alleged "specific facts, showing that there is a *genuine issue* for trial." Fed. R. Civ. P. 56(e) (emphasis added); *see Burdine*, 450 U.S. at 253. Consequently, on the issue of the temporary promotion of the seven male technicians, defendant's Motion for Summary Judgment should be denied.

Second, plaintiff asserted in her Memorandum in Opposition that "Mr. Handy forwarded the position description of Mr. David Jones. . . for a desk audit." Pl.'s Memo at 3. However, unlike the foregoing assertion where she referenced record evidence "capable of being converted into admissible evidence" in support of her gender discrimination claim, *Gleklen v. Democratic Congressional Campaign Comm., Inc.*, 339 U.S. App. D.C. 354, 199 F.3d 1365, 1369 (D.C. Cir. 2000), here, plaintiff has only cited her own unsupported Declaration to prove her assertion, *see* Pl.'s Memo. As a consequence, this assertion would only be mere speculation at trial. *Cf., e.g., Cearfoss Constr. Corp. v. Sabre Constr. Corp.*, 1989 U.S. Dist. LEXIS 9639, *6-7 (D.D.C. 1989); *Robinson v. Serv. Am. Corp.*, 2002 U.S. App. LEXIS 4330 (D.C. Cir. 2002). On the issue

---

[9] "An opposition to [] a motion [for summary judgment] . . . shall include references to the parts of the record relied on to support the statement." *Id.*

of the alleged forwarding of the draft position description of David Jones for review and reclassification, then, plaintiff has not presented a genuine issue of material fact. *See* Fed. R. Civ. P. 56(e).

**III. Retaliation under Tile VII**

Plaintiff has claimed that Library officials retaliated against her by reassigning many of her duties and responsibilities to other Library personnel, and by failing to afford her training opportunities or manual performance appraisals. *See* Compl. at ¶¶ 20-23. Defendant denied that it retaliated against plaintiff in any way. *See* Answ. at ¶ 21; *accord* Def.'s Memo at 2.

To satisfy her "*prima facie* claim of retaliation under Title VII[,]" it is plaintiff's burden to establish that "(1) [she] engaged in a protected activity under the statute, (2) the employer took an adverse personnel action, and (3) there is a causal connection between the protected activity and the adverse action." *Zervas v. District of Columbia*, 1992 U.S. Dist. LEXIS 9774 (D.D.C. 1992) (citing *Barnes v. Small*, 268 U.S. App. D.C. 265, 840 F.2d 972, 976 (D.C. Cir. 1988); *Burrus v. United Tel. Co*., 683 F.2d 339, 343 (10th Cir. 1982), *cert. denied*, 459 U.S. 1071 (1982)). Proof of this retaliatory motive can be demonstrated through direct or circumstantial evidence. *See id*.

**(a) Reassignment of Duties and Responsibilities**

Plaintiff claimed that Library officials retaliated against her beginning in 1990, one year after she engaged in the protected activity of filing an EEO action alleging gender discrimination. *See* Compl. at ¶ 21. According to plaintiff, defendant did so in part by "taking her duties and giving them to a lower graded employee who had no previous telecommunications experience

before being hired as a trainee." *Id*. Defendant conceded that it had reassigned a number of plaintiff's duties and responsibilities, but denied that this constitutes retaliation against plaintiff under Title VII. *See* Answ. at ¶ 21. Specifically, defendant offered the following explanation, which is the only *specific* example of reassignment of plaintiff's duties and/or responsibilities offered by either of the parties: in 1994, another woman, Shereese Smith, was designated by ITS User Support Group managers as the sole intermediary between the Library and the Definity G2 vendor's Denver office at the request of the vendor. *See* Def.'s Memo at 2. Plaintiff did not address or deny defendant's version of these facts.

Again, in order to prove retaliation regarding reassignment, plaintiff would have to demonstrate, *inter alia*, that defendant reassigned her duties and responsibilities to others *because* she engaged in the protected activity of filing the 1989 EEO claim. *See Barnes*, 840 F.2d at 976. In short, she would have to prove a "causal connection[.]" *Id*. Plaintiff cannot show that Library officials reassigned from her the task of working with the Definity G2 vendor in 1994 because she filed an administrative action some *five years earlier*. *See Powell v. Wash. Metro. Area Transit Auth*., 2002 U.S. Dist. LEXIS 25172 n.15 (D.D.C. 2002) (holding that an "initial EEOC complaint . . . filed . . . [in] 1997 . . . . would be *far too remote in time* to permit an inference of causation between the protected activity and the allegedly retaliatory act in 1999." (emphasis added)). Plaintiff merely has shown that in 1994 she was treated differently than another woman whom Library officials deemed qualified to assume sole responsibility of an assignment – a point which defendant has admitted, but insisted had nothing to do with

plaintiff's first EEO action alleging gender discrimination in 1989[10].

Moreover, plaintiff has not demonstrated that she was retaliated against in any way from 1990 to 1993, at a minimum, because during that period of time her title changed, her pay grade increased from GS-9 to GS-12, and she was tasked with the significant responsibility of implementing the system 85 telephone switching system. *See* Compl. at ¶¶ 8-9; Turner Dep. at 8. In short, there was no "adverse personnel action" suffered by plaintiff during those years. *Zervas*, 1992 U.S. Dist. LEXIS 9774.

For these reasons, plaintiff's claim that Library officials have retaliated against her from 1990 to the present by reassigning many of her duties and responsibilities to others does not present a genuine issue of material fact which merits this claim moving forward to trial. *See* Fed. R. Civ. P. 56(c).

**(b) Failure to Afford Training Opportunities or Manual Performance Appraisals**

Additionally in support of her retaliation claim, plaintiff has asserted that defendant's failure to afford her training opportunities or manual performance appraisals for the period of 1992-1995 was an unlawful response to plaintiff having filed the 1989 EEO action. *See* Compl. at ¶ 15. Defendant denied this allegation of retaliation as well, *see* Answ. at ¶ 15, while also "acknowledg[ing] that plaintiff did not receive performance ratings for [the] performance years [of 1992-1995,]" Def.'s Memo at 14. Notwithstanding, defendant stated that "the *other*

[10] By not addressing or disputing defendant's explanation of events regarding the reassignment to Shereese Smith, plaintiff has constructively "admitted" defendant's version of these facts. LCvR 7(h) ("In determining a motion for summary judgment, the court may assume that facts identified by the moving party . . . are admitted, unless such a fact is controverted [by the nonmoving party] . . . in opposition to the motion.").

*employees* on plaintiff's team *as well as the other teams* of the [User Support Group], also did not receive performance appraisals because of the workload constraints on the team leaders." *Id.* at 14-15 (emphasis added). Plaintiff did not address or deny defendant's version of these facts, and therefore has constructively "admitted" this version to be true. LCvR 7(h).

As with the preceding retaliation assertion, plaintiff's instant assertion lacks the requisite showing of a causal connection because it is "far too remote in time" to be credited by the Court. *Powell*, 2002 U.S. Dist. LEXIS 25172 n.15. Moreover, as explained *supra*, the Court has instead credited defendant's assertion that the practice of not affording training or manual performance appraisals applied to all ITS User Support Group employees equally, including those employees such as plaintiff in protected classes under Title VII. *See* Def.'s Memo at 14-15. And for the reason that the policy applied equally, by definition there can be no showing of an "adverse personnel action" suffered by plaintiff during those years. *Zervas*, 1992 U.S. Dist. LEXIS 9774; *accord International Bhd. of Teamsters*, 431 U.S. at 335 n.15.

In sum, (1) because plaintiff did not establish a causal connection between her protected activity and the failure of the Library to afford her training and performance awards for the period of 1992-1995 as her alleged injury is "far too remote in time[,]" *Powell*, 2002 U.S. Dist. LEXIS 25172 n.15.; and (2) because plaintiff suffered no adverse employment action, she has not "show[n] that there is a genuine issue for trial[,]" Fed. R. Civ. P. 56(e).

**CONCLUSION**

For the foregoing reasons, defendant's Motion for Summary Judgment relating to plaintiff's gender discrimination claim should denied. Defendant's Motion for Summary

Judgment relating to plaintiff's retaliation claim should be granted. An appropriate Order accompanies this Memorandum Opinion.

**Date: March 10, 2006**

**JOHN GARRETT PENN**
**United States District Court**